

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND AND HOWARD McDOUGALL, Trustee, | )<br>)<br>) |
| Plaintiffs, | ) No. 08 C 1886<br>)<br>) Honorable Charles R. Norgle |
| v. | )<br>) |
| FINGERLE LUMBER CO., | )<br>) |
| Defendants. | ) |

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge

The Plaintiffs, Central States, Southeast and Southwest Areas Pension Fund (the "Fund") and Trustee Howard McDougall (collectively, "Plaintiffs"), initiated this suit pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., seeking to recover pension contributions that the Defendant Fingerle Lumber Co. ("Fingerle") allegedly owes. Before the Court is Plaintiffs' Motion for Partial Summary Judgment on the issue of liability. For the reasons stated below, the motion is granted.

## I. BACKGROUND

### A. FACTS

The following facts are undisputed. On or around May 11, 2006 Fingerle and Local Union No. 247 of the International Brotherhood of Teamsters (the "Union") entered into a Collective Bargaining Agreement ("CBA") through which Fingerle agreed to pay the Fund pension contributions on behalf of its covered employees for the period of September 1, 2005 through August 31, 2009. In conjunction with the CBA, Fingerle and the Union also executed a

Participation Agreement, which set forth the terms and conditions for Fingerle's participation in the Fund's pension plan. The Participation Agreement and the CBA both required that Fingerle comply with the terms of the Fund's Trust Agreement. In line with the three agreements, Fingerle made contributions to the Fund on behalf of twenty-eight employees at a rate of $85 per week from August 2005 until November 3, 2007.

On October 31, 2007 Fingerle and the Union entered into an "Agreement to Amend Labor Contract" ("Amended Labor Contract"). The Fund was not a party to their agreement. Pursuant to the Amended Labor Contract, Fingerle and the Union agreed that, as of November 3, 2007, Fingerle would not be required to make contributions to the Fund for the remainder of the plan period set forth in the original CBA. In light of this, on November 1, 2007, in accordance with the Participation Agreement, counsel for Fingerle sent to the Fund a copy of its Amended Labor Contract and a letter indicating that Fingerle was withdrawing from the Fund and therefore ceasing its contributions. In response, the Fund's attorney advised Fingerle that the Amended Labor Contract was invalid. Fingerle disagreed.

On January 10, 2008 the Fund informed Fingerle that the Fund's Trustees would resolve the parties' disagreement, as stated in Article V, section 2 of the Trust Agreement. That section provides:

> All questions or controversies . . . arising in any manner or between any parties or persons in connection with the Fund . . . as to any writing, decision, instrument or accounts in connection with the operation of the Trust Fund or otherwise, shall be submitted to the Trustees . . . and the decision of the Trustees . . . shall be binding on all parties [ ]. The Trustees are vested with discretionary and final authority in making all such decisions . . . .

Pl.'s Local Rule 56.1 Statement, Ex. 2, A, Trust Agreement at 18 (Art. V § 2).

On March 25, 2008 the Trustees issued a decision with respect to the parties' dispute. There, in considering the validity of the Amended Labor Contract, the Trustees found that any

2

agreement that purports to eliminate an employer's obligation to pay contributions to the Fund without the Fund's express consent, like the Amended Labor Contract, is invalid and unenforceable. See id., Ex. 2, B at 9. The Trustees also found that neither the communications provided to the Fund by Fingerle's counsel, nor the terms of the Amended Labor Contract terminated Fingerle's obligation to contribute to the Fund. Id. The Trustees' decision was supported by several documents, including the express terms of the parties' various agreements, which we discuss below.

>The Participation Agreement expressly states:

>>When . . . the Employer and the Union agree to change the collective bargaining agreement, the Employer shall promptly submit the entire agreement or modification to the [Fund]. Any agreement or understanding which affects the Employer's obligation which has not been submitted to the Fund(s) as required by this paragraph, shall not be binding on the Trustees [ ]. The following agreements shall not be valid: . . . c) an agreement that purports to prospectively eliminate the duty to contribute to the Pension Fund during the stated term of a collective bargaining agreement and that has been accepted by the Pension Fund.

Id., Ex. 2, B, Participation Agreement at 2 ¶ 6. It further states:

>>This Agreement may not be modified or terminated without the written consent of the Fund(s). To the extent there exists any conflict between any provisions of this Participation Agreement and any provisions of the collective bargaining agreement, this Participation Agreement shall control.

Id. ¶ 14.

With respect to the Fund's Trust Agreement, it states that an employer must contribute to the Fund for the entire term of the CBA, with only two exceptions – the Union loses its status as the employees' bargaining representative, or the Trustees terminate the employer's participation in the Fund. Id., Ex. 2, A, Trust Agreement at 10 (Art. III §§ 7 (a), (b)); Trust Agreement at 17 (Art. IV § 20). The parties do not dispute that neither of these exceptions applies. Moreover, the Trust Agreement states:

> Any agreement or understanding between the parties that in any way alters or affects the Employer's contribution obligation as set forth in the [CBA] shall be submitted promptly to the Fund in the same manner as the [CBA]; any such agreement or understanding between the parties that has not been disclosed to the Fund as required by this paragraph shall not be binding on the Trustees and shall not affect the terms of the [CBA] which alone shall be enforceable.

Id., Trust Agreement at 7 (Art. III § 1).

Construing the terms of these agreements, the Trustees resolved the parties' dispute in the Fund's favor, holding that the Amended Labor Contract was invalid and unenforceable. The Fund notified Fingerle of the Trustees' decision on March 28, 2008. Fingerle, nevertheless, has not made contributions to the Fund for the period after November 2, 2007, maintaining that upon its execution of the Amended Labor Contract its obligation to pay contributions to the Fund contemporaneously ceased.

## B. Procedural History

In an attempt to recover the contributions that Fingerle allegedly owed to it, the Fund filed an ERISA complaint in this Court on April 2, 2008. In November 2008 the Fund filed a motion for partial summary judgment, which is fully briefed and before the Court. The Fund's motion is restricted to the issue of liability, and thus the amount of damages is not at issue at this point in the proceedings.

## II. DISCUSSION

### A. Standard of Decision

Summary judgment is permissible when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The nonmoving party cannot rest on the pleadings alone, but must identify specific facts, see Heft v. Moore, 351 F.3d 278, 283 (7th Cir. 2003), that raise more than a mere scintilla of evidence to show a genuine triable issue of material fact. See Vukadinovich v. Bd. of Sch. Tr.'s of North

4

Newton School, 278 F.3d 693, 699 (7th Cir. 2002). Under this standard, "[c]onclusory allegations alone cannot defeat a motion for summary judgment." Thomas v. Christ Hospital and Medical Center, 328 F.3d, 890, 892-93 (7th Cir. 2003) (citing Lujan v. Nat'l Wildlife Federation, 497 U.S. 871, 888-89 (1990)).

In deciding a motion for summary judgment, the court can only consider evidence that would be admissible at trial under the Federal Rules of Evidence. See Stinnett v. Iron Works Gym/Executive Health Spa, Inc., 301 F.3d 610, 613 (7th Cir. 2002). The court views the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party. See Fed. R. Civ. P. 56(c); see also Koszola v. Bd. of Educ. of City of Chicago, 385 F.3d 1104, 1108 (7th Cir. 2004). "In the light most favorable" simply means that summary judgment is not appropriate if the court must make "a choice of inferences." See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); see also First Nat'l Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 280 (1968); Spiegla v. Hall, 371 F.3d 928, 935 (7th Cir. 2004). The choice between reasonable inferences from facts is a jury function. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

## B. REVIEW OF THE TRUSTEES' DETERMINATION

The parties do not dispute that the Trustees had binding authority to resolve their disagreements and to interpret the ERISA plan documents. Because of this, we review the Trustees' determination under the deferential arbitrary and capricious standard. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 111 (1989); Russo v. Health, Welfare & Pension Fund, 984 F.2d 762, 765 (7th Cir. 1993) (holding that where a pension plan gives the plan's trustees broad discretion to make final and binding decisions with respect to the plan's interpretation, a reviewing court will not upset the trustees' decision unless it is arbitrary and capricious). "The

arbitrary and capricious standard is the least demanding form of judicial review of administrative action, and any questions of judgment are left to the administrator of the plan. Absent special circumstances such as fraud or bad faith, the [plan administrator's] decision may not be deemed arbitrary and capricious so long as it is possible to offer a reasonable explanation, based on the evidence, for that decision." Semien v. Life Ins. Co. of N. Am., 436 F.3d 805, 812 (7th Cir. 2006); Trombetta v. Cragin Fed. Bank for Sav. Employee Stock Ownership Plan, 102 F.3d 1435, 1438 (7th Cir. 1996).

Under this standard, to establish that the Trustees' determination was arbitrary and capricious, Fingerle must show not that the determination was wrong, but that it was "downright unreasonable." James v. GM Corp., 230 F.3d 315, 317 (7th Cir. 2000). "It is not our function to decide whether we would reach the same conclusion as the Plan or even rely on the same authority." Carr v. Gates Health Care Plan, 195 F.3d 292, 295 (7th Cir. 1999). So long as the Trustees made an informed judgment and articulated "an explanation for it that is satisfactory in light of the relevant facts, then that decision is final." Tegtmeier v. Midwest Operating Eng'rs Pension Trust Fund, 390 F.3d 1040, 1045 (7th Cir. 2004) (citing Exbom v. Cent. States, S.E. & S.W. Areas Health & Welfare Fund, 900 F.2d 1138, 1143 (7th Cir. 1990)). In other words, if the Trustees' decision "makes sense," then the arbitrary and capricious standard is satisfied. Russo v. Health, Welfare & Pension Fund, 984 F.2d at 766.

The Fund asserts that it is entitled to summary judgment because the Trustees' made a reasonable determination that the Amended Labor Contract was a prospective agreement that the plan agreements' express language ultimately barred. In response, Fingerle argues that the Trustees' decision was arbitrary and capricious because, among other things, the Amended Labor Contract did not *prospectively* eliminate its duty to contribute to the Fund; instead, it *immediately*

6

eliminated its duty to contribute. In other words, according to Fingerle, the termination of its obligation to make contributions was not something that could happen in the future, and thus it was not "prospective." Fingerle maintains that the termination occurred contemporaneously with the execution of the Amended Labor Contract; thus, in Fingerle's view, this type of modification is not prohibited.

In support of this view, Fingerle asserts that the word "prospectively," as it's used in the Participation Agreement, means "likely or expected to happen." Def.'s Resp. to Pl.'s Mot. for S.J. at 3 (citing The American Heritage Dictionary of the English Language (4th ed.)). Thus, under this definition, Fingerle argues that by inserting the word "prospectively" in the Participation Agreement, the Fund intended to void only those agreements that would *likely* or *probably* terminate an employer's obligation to contribute to the Fund. But what makes the Amended Labor Contract different, says Fingerle, is that the amended agreement immediately and without question terminated the company's obligation to contribute to the Fund. As a result, Fingerle asserts that the Trustees' finding that the new contract was prospective is unreasonable. Given the arbitrary and capricious standard, however, the Court disagrees. There is ample support to accommodate the Trustees' decision.

The Trustees set forth the reasons for their decision in the minutes from their March 25, 2008 meeting. There, in construing the Participation Agreement, the Trustees found on the advice of their lawyers that the provision against agreements that "prospectively eliminate the duty to contribute" encompasses any termination after the effective date of any collective bargaining agreement that the Fund accepted. See Pl.'s Local Rule 56.1 Statement, Ex. 2, B, Meeting Minutes at 6. The Amended Labor Agreement, according to the Trustees, fell into this category because it sought to terminate Fingerle's contributions for all weeks after November 4,

7

2007. Id. In effect, this new agreement terminated every payment as it became due after November 4, 2007. This, the Trustees' said, "certainly does attempt to 'prospectively eliminate the duty to contribute to the Pension Fund during the stated term of the collective bargaining agreement.'" Id.

Moreover, the Trustees also considered a letter to the Fund written by Fingerle's counsel. In his letter, Fingerle's attorney stated that by notifying the Fund of the Amended Labor Contract, "'[Fingerle] prospectively withdrew from the Fund . . . as of November 3, 2007.'" Id. at 7 (citing the November 1, 2007 letter and noting an emphasis in the original). The letter went on to say that "'the Fund well knows that the Employer and the Union have the very right the Fund rejects to prospectively amend their Labor Agreement.'" Id. (noting an emphasis in the original). The Trustees interpreted these statements as admissions that the Amended Labor Agreement sought to prospectively eliminate Fingerle's duty to contribute. In turn, based on these admissions, the Trustees found that the Participation Agreement expressly barred such a prospective agreement.

Beyond that, the Trustees also considered the various dates relevant to the Amended Labor Contract. They found that Fingerle and the Union executed the Amended Labor Contract on October 31, 2007. Id. Then, on November 1, 2007, the parties sent the Amended Labor Contract to the Fund. Id. What is more, despite their receipt of the Amended Labor Contract on November 1, the Trustees found that it would not go into effect until November 4 – three days after the Fund received the Amended Labor Contract. Id. Because of this, the Trustees considered the Amended Labor Contract a prospective agreement, despite Fingerle's opinion to the contrary.

Turning to another plan document, the Trustees found that the Trust Agreement imposed a clear duty on Fingerle to contribute "for the entire term of any collective bargaining agreement accepted by the Fund." Id. at 7-8. In support of this, the Trustees looked to previous meeting minutes, in which they adopted the "entire term" language. These minutes, in the Trustees' opinion, showed that the "entire term" language was intended to vitiate all mid-term agreements that sought to terminate an employer's obligation to contribute. Id. at 8. With this in mind, the Trustees concluded that "even assuming for the sake of argument that the participation agreement does not accomplish the Trustees' goal of prohibiting mid-term withdrawals, the trust agreement does, and Fingerle does not argue otherwise." Id.

In further support, the Trustees discounted Fingerle's reliance on Central States v. Pneumatic Trucking, Inc., which, in their assessment, held that "the only remedy for bargaining out is for the Fund to terminate the employer's participation." Id. (citing 2004 WL 2806306, at *5 (N.D. Ill. Dec. 2, 2004)). The Trustees distinguished Pneumatic Trucking and found:

> The remedy of termination is illusory since the employer will have already bargained out of the Fund. Further, under the trust agreement and participation agreement, each employer agrees to be bound by the Fund rules, including the rule contemplated by this provision of the plan. Because they are bound by this rule, the employers have promised the Fund they will not bargain out during the stated term of their agreement and the appropriate remedy if there is a violation is to ignore the agreement that purports to allow bargaining out.

Id. The Trustees acknowledged, however, that before Central States appealed the Pneumatic Trucking decision "the court agreed to vacate the portion of the decision related to the mid-contract termination issue." Pl.'s Local Rule 56.1 Statement, Ex. 2, B, Meeting Minutes at 4. With that, aside from their opinion that the decision did not apply, the Trustees found that Pneumatic Trucking had no precedential value. Id.

9

Under the arbitrary and capricious standard, the Court finds that the Trustees' determination was a reasonable one. It is clear from the meeting minutes that the Trustees based their determination on a reasonable interpretation (albeit a different interpretation than Fingerle's) of the Participation Agreement and on other evidence, such as letters and past minutes, which they had before them. Their reasons are well-supported and fit within the evidence of the case. Further, and perhaps more importantly, there is nothing to show that the Trustees were involved in any type of fraud, collusion or bad faith in reaching their conclusions. Semien, 436 F.3d at 812. It is one thing to disagree with the Trustees' determination, but it is quite another to show that the determination was "downright unreasonable." Aside from offering an alternative interpretation of the parties' plan documents, Fingerle presents the Court with nothing to show that the Trustees' decision was unreasonable, much less "downright unreasonable." See Davis v. Unum Life Ins. Co. of Am., 444 F.3d 569, 576-77 (7th Cir. 2006) ("[Q]uestions of judgment and management are to be left to the administrator in this situation. The judicial task here is not to determine if the administrator's decision is correct, but only if it is reasonable."); Morton v. Smith, 91 F.3d 867, 872 (7th Cir. 1996) (rejecting defendant's opposing construction of a plan's term, where the term was susceptible to another constructions that the administrator adopted).

Fingerle's reliance on the rule of contract construction that any ambiguity must be resolved against the drafting party, Def.'s Resp. at 4, is misplaced. It is well-established that "[t]he general contract principle that ambiguous terms are construed in favor of an insured is not applicable when an ERISA plan explicitly grants the administrator [ ] broad discretion." Gingold v. Unum Life Ins. Co. of Am., 74 Fed. Appx. 660, 662 (7th Cir. 2003) (citing Ross v. Ind. State Teacher's Assoc., 159 F.3d 1001, 1011 (7th Cir. 1998)). Under this construct, assuming that the

term "prospectively" is ambiguous, it is immaterial that the Trustees interpreted the term in such a way that the Amended Labor Contract was barred by the Participation Agreement. The Trustees in this case did not disregard evidence, they did not put aside Fingerle's submissions and they did not come to a conclusion that contradicts the controlling plan documents. The Trustees simply came to a conclusion with which Fingerle disagrees. This does not support a finding that the decision was arbitrary and capricious.

Finally, it is significant that in making their determination the Trustees recounted the strong policy arguments against the allowance of mid-contract withdrawals by employers, which Fingerle does not contest. As the Fund explained in its reply brief, multi-employer funds rely on collective bargaining agreements "'to determine the income they expect to receive, which governs their determination of levels of benefits.'" Pl.'s Reply Br. at 2 (quoting Central States Pension Fund v. Gerber Truck Serv., Inc., 870 F.2d 1148, 1151 (7th Cir. 1989)). And, if employers are freely allowed to terminate their obligations to pay the fund by modifying their collective bargaining agreements without any notification, the other plan participants make up the difference with higher payments or less benefits for their workers. See Gerber Truck Serv., Inc., 870 F.2d at 1151. Recognizing this, the Trustees noted at their March 28 meeting that the requirement against mid-contract terminations "is necessary to protect the Fund because it makes it more likely that the expected revenue stream will be realized and prevents strategic deals designed to minimize withdrawal liability and maximize the Fund's benefit liability; while still giving the employer the flexibility to withdraw at the end of the stated term of each agreement." See Pl.'s Local Rule 56.1 Statement, Ex. 2, B, Meeting Minutes at 5. These policy considerations provide an additional means through which the Trustees would interpret the plan agreements to vitiate all mid-contract terminations of employer's payment obligations.

11

The Trustees' decision, consequently, is not unreasonable, and the Court is not in a position to disturb their findings. See Tegtmeier, 390 F.3d at 1045; Patterson v. Caterpillar, Inc., 70 F.3d 503, 505 (7th Cir. 1995) ("Before concluding that a decision was arbitrary and capricious, a court must be very confident that the decisionmaker overlooked something important or seriously erred in appreciating the significance of the evidence.") (citing Pokratz v. Jones Dairy Farm, 771 F.2d 206, 209 (7th Cir. 1985)). Fingerle's attempt to subvert liability by raising points of disagreement with the Trustees' interpretation of the plan documents is insufficient under the arbitrary and capricious standard. Sisto v. Ameritech Sickness & Accident Disability Benefit Plan, 429 F.3d 698, 701 (7th Cir. 2005) ("Raising debatable points does not entitle [petitioner] to a reversal under the arbitrary-and-capricious standard."). The Fund is entitled to summary judgment; thus, the Court declines to consider the Fund's alternative argument – that even if the Trustees' decision was arbitrary and capricious, the Amended Labor Contract was invalid as a matter of law. It is enough that the Trustees' decision is not arbitrary and capricious.

### III. CONCLUSION

For the reasons stated above, Plaintiffs Central States, Southeast and Southwest Areas Pension Fund's and Trustee Howard McDougall's motion for summary judgment on the issue of liability is granted against the Defendant Fingerle Lumber Co.

IT IS SO ORDERED.

ENTER:

CHARLES R. NORGLE, Judge
United States District Court

DATED: 4-22-09